**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| MAXAVA LLC,<br>*Plaintiff*,<br><br>v.<br><br>AMAL MACDONALD, et al,<br>*Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 3:25-CV-848 (OAW) |

**OMNIBUS RULING**

**THIS ACTION** is before the court upon Defendant M81's Motion to Dismiss for Lack of Jurisdiction, ECF Nos. 114 ("Motion to Dismiss") and Motion to Stay Discovery, ECF No. 115 ("M81 Motion to Stay"); and the Motion to Stay Discovery filed by Defendants AmalMac LLC and Amal MacDonald, ECF No. 123 ("MacDonald Motion to Stay"). The court has reviewed all motions and memoranda in support thereof; Plaintiff's opposition briefs, ECF Nos. 119, 122,[1] 125;[2] Defendants' reply briefs, ECF Nos. 127, 128, 129; and the record in this matter, and is thoroughly advised in the premises. After careful review, all three motions hereby are **DENIED**.[3]

[1] Plaintiff asks that certain of the exhibits it filed in support of its opposition to the Motion to Dismiss be kept under seal. The documents filed at ECF No. 121 contain confidential commercial information, in which all parties have a privacy interest that countervails the usual presumption of public disclosure of judicial documents. Accordingly, pursuant to Local Rule 5(e), these documents shall remain under seal. As there is no known date by which the documents no longer will require this protection, they shall remain under seal until further order of the court. Separate but related, the court notes that several client lists are reproduced several times on the public docket. *See* ECF Nos. 114-3 and -4; 115-3 and -4; 119-36; and 129-1, -2, and -3. If these were intended to be filed under seal, the parties must move for that relief.
[2] Plaintiff asked for leave to file supplemental evidence in support of its opposition to the Motion to Dismiss, but the court finds any supplemental evidence unnecessary, and so the motion is denied as moot, and the attachments thereto have not been reviewed.
[3] The court finds that the briefs are thorough and complete and that there is no need for oral argument on the Motion. Therefore, the request for oral argument is denied. See D. Conn. L. Civ. R. 7(a)(3) ("Notwithstanding that a request for oral argument has been made, the Court may, in its discretion, rule on any motion without oral argument.").

## I. BACKGROUND[4]

Defendant MacDonald began working for Plaintiff's sales team in November 2022. As a condition of her employment, MacDonald agreed to several restrictive covenants, including a non-competition provision and a confidentiality provision.

In February 2025, Plaintiff informed MacDonald that her position would be downsized, with her termination becoming effective in March 2025.[5] Plaintiff's post-termination review of MacDonald's company-issued electronics revealed that upon being informed that she would lose her job, and while she still had access to Plaintiff's networks and technology, she copied hundreds of confidential commercial documents to personal storage before undertaking to work for Defendant M81, a purported competitor of Plaintiff,[6] under the auspices of Defendant AmalMac, LLC.[7] Plaintiff alleges that all Defendants have been possessing and using its trade secrets in violation of state and federal law, and MacDonald's contractual obligations.

Plaintiff brought suit on May 28, 2025, and immediately sought a temporary restraining order and a preliminary injunction to prevent any misuse of its proprietary information. The court denied the temporary restraining order, but set a hearing on the issue of a preliminary injunction. ECF No. 54. In connection therewith, the court ordered the parties to exchange limited discovery. *Id.*, ECF No. 68.

---

[4] These facts are taken from Plaintiff's amended complaint and are considered to be true for the purpose of this ruling. ECF No. 75.

[5] MacDonald's last day with Plaintiff was supposed to be March 7, 2025, but she allegedly failed to return her company laptop and cellphone by that date, and so Plaintiff extended her last day to March 21, 2025, thereby also extending the severance period during which Plaintiff continued to pay her.

[6] M81 contends it does not compete with Maxava, but the court need not and does not resolve this issue at this point in litigation.

[7] Formally, MacDonald is an independent contractor, but Plaintiff alleges that she is functionally an M81 employee. The court need not and does not resolve this dispute herein.

Two days before the hearing was to take place, M81 moved for the entry of a preliminary and permanent injunction against it that closely tracked the relief Plaintiff demanded. ECF No. 85. The court granted that motion in part, issuing a preliminary (but not permanent) injunction, without ordering Plaintiff to post any bond as security. ECF No. 88. The court also referred the parties to a United States Magistrate Judge to discuss settlement, as the record at that point indicated substantial agreement amongst all parties as to the proper use of any information Defendants were not authorized to possess. *Id.* Plaintiff objected to this action by the court, suddenly desiring additional protections it never before had sought. ECF No. 89. The court denied additional relief. ECF No. 93.

Settlement was not achieved, though, and so litigation continued. Now, M81 asks to be dismissed for lack of personal jurisdiction, and for a stay of discovery pending resolution of that motion. Separately but relatedly, MacDonald and AmalMac inform the court that they have recently filed suit in Pennsylvania to enforce an arbitration provision contained in MacDonald's employment agreement with Plaintiff, and they seek a stay of discovery pending resolution of that petition in that court.

## II. DISCUSSION

### *A. MacDonald Motion to Stay*

The court turns first to the easy question of whether to stay discovery pending resolution of MacDonald's motion to compel in Pennsylvania. That request is denied.

MacDonald and AmalMac[8] purport to seek a stay under the Federal Arbitration Act ("FAA"), which requires courts to stay a lawsuit where the relevant issues are arbitrable

[8] Adding to the illogic of this gambit is the fact that AmalMac was not a party to MacDonald's employment agreement, and so it cannot compel arbitration under the agreement.

pursuant to a written agreement. 9 U.S.C. § 4. But such a stay is only required once the court is "satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement . . . ." *Id.*

This court already has ruled that the relevant forum selection clause in MacDonald's employment agreement with Plaintiff is permissive, thus allowing, but not mandating Plaintiff to enforce its restrictive covenants in Pennsylvania courts. ECF No. 54.[9] Despite this clear ruling, AmalMac and MacDonald apparently have decided to seek a more favorable disposition in a different jurisdiction, in that they have filed a petition to compel arbitration in the Eastern District of Pennsylvania, a full five months after they appeared in this case. There, they again claim that this court is without jurisdiction to compel arbitration, and that only a Pennsylvania court may compel arbitration.[10]

In the first instance, the court doubts that Section 4 of the FAA provides that only the district court for the jurisdiction in which parties agree to arbitrate may compel arbitration. That statute clearly states the opposite:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration ***may petition any United States district court which, save for such agreement, would have jurisdiction under title 28,*** in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement.

[9] MacDonald and AmalMac previously argued that Section 12 of the agreement governed Plaintiff's claims for injunctive relief, but now they argue that Section 18 of the agreement governs apparently all of Plaintiff's claims. Each argument relies upon incomplete and selective citation to MacDonald's employment agreement with Plaintiff, drawing increasing concern upon its second occurrence.

[10] The court finds this strategy to exceed MacDonald's and AmalMac's prior representation that they might "seek adjudication of the parties' dispute through binding arbitration ***via an appropriate responsive pleading***." ECF No. 47 at 5 n.2.

9 U.S.C. § 4 (emphasis added). Here, all the requirements for diversity jurisdiction are satisfied, and MacDonald and AmalMac are residents of Connecticut, rendering this a United States district court which, save for (and even by the terms of) MacDonald's employment agreement with Plaintiff, would have (and indeed does have) jurisdiction over this action pursuant to Title 28 of the United States Code. Accordingly, MacDonald and AmalMac clearly could have moved this court to compel arbitration and, if that motion had proven meritorious, this court could have ordered the parties to arbitrate in accordance with their agreement, which is to say, in Pennsylvania. *See U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 154 (2d Cir. 2001) (affirming a ruling out of the Southern District of New York ordering parties to proceed to arbitration in London).

Only this reading of the statute allows it to retain its internal consistency. The subsequent clause providing that "[t]he hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed," 9 U.S.C. § 4, appears to refer to those hearings and proceedings necessary to show that there exists a valid arbitration agreement and that one subject thereto has failed to perform in conformance therewith. Those hearings and proceedings, regardless of what the agreement says, may take place in the district where the petition is filed. The court finds this to be the only logical reading of the statute, since the question of venue itself is a procedural matter which courts must leave to the discretion of the arbitrator. *UBS Fin. Servs., Inc. v. W. Virginia Univ. Hosps., Inc.*, 660 F.3d 643, 655 (2d Cir. 2011) ("[W]e hold that venue is a procedural issue that . . . arbitrators should address in the first instance, and that the District Court lacked subject matter jurisdiction to resolve it.") (citing *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444 (2003)). Thus, accepting

MacDonald's and AmalMac's proposition would require courts to determine the proper venue for arbitration (an issue over which it does not have jurisdiction) even before determining arbitrability itself.

However, even if the court were to accept this proposition, MacDonald's employment agreement with Plaintiff clearly and explicitly excludes from its arbitration provision any dispute over a breach of restrictive covenants (such as the one in this case). ECF No. 1-11 at 9–10.[11] And, as the court already has ruled, *see* ECF No. 54, the provision governing enforcement of the restrictive covenants contains a *permissive* forum selection clause through which, by her agreement, MacDonald consented to personal jurisdiction in Pennsylvania, but not to the exclusion of any other venue. Plaintiff has a right to sue AmalMac and MacDonald in the state where they both reside, and therefore this court has jurisdiction over this dispute, and venue is proper here.

Accordingly, MacDonald's and AmalMac's endeavors in Pennsylvania present no reason at all for any stay whatsoever, and so the MacDonald Motion to Stay is denied.[12]

Moreover, the court finds the filing of a duplicative action to attain a different ruling than the one the court already has issued to be so devoid of any legal basis or support that it cannot be viewed to have been raised in good faith. The court agrees with Plaintiff that sanctions are in order. Federal Rule of Civil Procedure 11(c) requires notice to the offending party and a reasonable opportunity to respond before sanctions are imposed, which the court finds to have been satisfied by Plaintiff's request for sanctions in its

[11] Section 18 of the agreement contains the arbitration provision, which governs any dispute "[e]xcept as provided in Section 12." ECF No. 1-11 at 10. Section 12, in turn, contains the restrictive covenants in question, and section 12.10 specifically provides for venue in Pennsylvania for any dispute arising out of a breach of those covenants, which may include lawsuits, but only "in addition to, and not in lieu of, any other rights and remedies that maybe available to [Plaintiff] under law or in equity." *Id.* at 9.

[12] The court need not address the standard for a stay under Rule 26 because the court concludes that, under these circumstances, the request is not made in good faith, and there is no good cause to grant it.

opposition to the MacDonald Motion to Stay, and in AmalMac and MacDonald's response to that request in its reply. They contend that it is Plaintiff who has sought to engage in unnecessary litigation, but the court finds this assertion to be unresponsive and wholly insufficient. While all parties have frustrated the reasonable progress of this case, this is the first action which justifies a sanction. Thus, AmalMac and MacDonald hereby are ordered to pay Plaintiff's costs and fees in litigating the MacDonald Motion to Stay.

### ***B. Motion to Dismiss***

The court turns next to M81's Motion to Dismiss, in which M81 argues that this court does not have personal jurisdiction over it.

A two-part inquiry is used to determine whether a court has personal jurisdiction over a particular party. First, the relevant long-arm statute must be satisfied, and second, exercising personal jurisdiction must comport with the principals of due process. *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999). It is Plaintiff's burden to show that the court has personal jurisdiction over a particular defendant. *Metropolitan Life Insurance Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). Where the issue arises very early in litigation, before discovery and without an evidentiary hearing, a plaintiff "need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." *Bank Brussels*, 171 F.3d at 784 (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981)). Where the parties have conducted discovery, but the court has not held a hearing, this prima facie showing must include asserted facts that, if credited by the factfinder, "would suffice to establish jurisdiction over the defendant." *Id.* (quoting *Met. Life*, 84 F.3d. at 567).

Here, some discovery has been conducted, though not specific to the issue of jurisdiction. Indeed, M81 asks that discovery be stayed pending resolution of its Motion to Dismiss, while Plaintiff asks for discovery at least as to this narrow issue. But the court finds that even without additional discovery, Plaintiff has satisfied the more demanding standard and has shown, with adequate supporting facts, both that this court can exercise specific jurisdiction over M81, and that M81 has forfeited any objection to personal jurisdiction.

### *1. __Connecticut's Long-Arm Statute__*

Turning to the first prong of the two-step analysis, the court agrees with M81 that its commercial form (a French Société par Actions Simplifiée, or SAS) qualifies it as a foreign limited liability corporation. *See Candelario v. Bobst N. Am., Inc.*, No. 18-CV-6281 CJS, 2019 WL 4112179, at *1 n.1 (W.D.N.Y. Aug. 29, 2019) (noting that an SAS generally is treated as an LLC), *In re Air Crash at Belle Harbor, New York on Nov. 12, 2001*, No. MDL 1448 (RWS), 2006 WL 1288298, at *2 (S.D.N.Y. May 9, 2006) (describing an SAS as a French LLC). As such, by Connecticut law, it is subject to suit in Connecticut

> by a resident of this state or by a person having a usual place of business in this state, whether or not such foreign corporation is transacting or has transacted business in this state and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows: (1) Out of any contract made in this state or to be performed in this state; (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state; (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or

> (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

Conn. Gen. Stat. § 33-929(f).

M81 asserts that the long-arm statute cannot apply to it because (1) Plaintiff is not a resident of Connecticut, and thus it cannot use the long-arm statute to establish jurisdiction over M81, and (2) stream-of-commerce transactions cannot be the basis for personal jurisdiction where those transactions are effected through an independent contractor.

With respect to the former argument, all it is required to show to invoke the long-arm statute is that Connecticut is a usual place of its business. *See Century Metal Recycling Priv. Ltd. v. Metal Worldwide, Inc.*, No. 3:11CV1072 (JBA), 2012 WL 13013637, at *3 (D. Conn. Aug. 2, 2012) ("[C]ourts have construed [the term 'resident'] to require less than either incorporation in Connecticut, or that a corporation have its 'principal' or 'only' place of business in Connecticut."). Rather, "it must, at the very least, be customary or expected that the plaintiff[] conduct[s] business" in Connecticut. *Matthews v. SBA, Inc.*, 149 Conn. App. 513, 560 (2014). With five clients in this state, and regular attempts to secure more, Plaintiff asserts that it has shown this much.[13] M81 does not respond to this counterargument in its reply brief. The court agrees with Plaintiff that the continuous servicing of clients, and soliciting more, is sufficient to show that it regularly does business in Connecticut such that it qualifies as a resident and it may invoke the long-arm statute.

---

[13] Plaintiff also points to its recent employment of MacDonald as support for its residency, but case law is clear that business must be conducted in Connecticut at the time a suit is filed, and MacDonald had been terminated months before Plaintiff initiated this suit. *Matthews v. SBA, Inc.*, 149 Conn. App. 513, 556, (2014) ("The plain language of the statute speaks to the time of the filing of the suit, rather than the time when the underlying events occurred, as the operative moment at which the 'usual place of business' or residency requirement must be satisfied."). Accordingly, the employment of MacDonald is inapposite.

As to the latter argument, the court need not address the stream-of-commerce argument because M81's allegedly tortious conduct is sufficient to trigger the long-arm statute's reach. Indeed, even M81 agrees that Plaintiff's claims sound in tort, ECF No. 114-1 at 15 ("Here, each cause of action against M81 sounds in tort.") (footnote omitted), and Connecticut's long-arm statute clearly provides that companies are subject to suit in Connecticut where the cause of action arises from tortious conduct in this state. Plaintiff's allegations that M81 worked with MacDonald (its agent in Connecticut) to receive allegedly stolen trade secrets suffice to show that M81 engaged in tortious conduct here. As such, the court finds that the long-arm statute is satisfied.

Turning, then, to the question of due process considerations, the court must apply another two-part inquiry. The court must determine whether M81 has sufficient minimum contacts to support an exercise of personal jurisdiction (the "minimum contacts" element), and whether such exercise is reasonable under the circumstances of this particular case (the "reasonableness" element). *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010). With respect to the reasonableness element, there are a number of factors to consider: "(1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Id.*

M81 argues that its connection to Connecticut is practically nonexistent, it being a small French company. In fact, it appears that MacDonald is its only contact to the state. But Plaintiff asserts that that connection is enough to establish specific jurisdiction

because this suit arises out of or relates to that single contact. *Porina v. Marward Shipping Co.*, 521 F.3d 122, 128 (2d Cir. 2008). Though Plaintiff argues at length that MacDonald is not merely an independent contractor for M81, but a deliberately-mischaracterized employee thereof, the court need not address that argument because it is clear that whatever her role, she is M81's agent, and, contrary to M81's assertion, she was M81's agent when she committed the relevant conduct.

M81 argues that MacDonald is its agent only for the narrow purpose of selling its products in North America, and also only since she formally began working with them on April 1, 2025, the date she registered AmalMac in Connecticut. M81 argues that the offense occurred before that date, when MacDonald still worked for Plaintiff, and therefore that this dispute does not arise from its contact with MacDonald. In the first instance, the complaint clearly alleges that the offense continued after April 1, 2025, insofar as MacDonald and M81 allegedly continued to possess and to use information to which it was not entitled.[14] So the dates of MacDonald's employment are irrelevant.

Moreover, the record belies M81's assertion. MacDonald's relationship with M81 clearly began in late 2024, when she was being vetted for a position with the company. *See* ECF No. 121-1. And while such preliminary communications may not be sufficient to establish agency, she had an M81 email address as early as March 12, 2025, *see* ECF No. 121-3, which she used throughout the rest of that month, even to email prospective clients (prospects whom she contractually was barred from contacting) as early as March 19, 2025, *see* ECF No. 121-23; *see also* ECF No. 121-4 (showing communication with a

[14] Plaintiff also submitted an email which MacDonald sent to Maxava clients in late June 2025, with a carbon copy sent to several M81 employees, including its founder. *See* ECF Nos. 121-6. This is evidence of ongoing use of Plaintiff's trade secrets, and it contradicts M81's assertion that it only retains 102 contacts in its rolls from MacDonald, all of which she developed before her employment with Plaintiff.

Maxava client on March 21, 2025) and ECF No. 121-7 (initiating contact with a Maxava client on March 25, 2025), and she participated in meetings with clients nearly as early, *see* 121-9 (noting a meeting scheduled with a prospective client, MacDonald, and M81 executives scheduled for March 26, 2025). And on March 19, 2025, *when she was still within her severance period during which she was still receiving severance payments from Plaintiff*, MacDonald *directly* sent an M81 colleague an email with the subject line, "Follow up," which had no message in the body, but which did have a single attachment: a PowerPoint file with a title clearly indicating that it was produced by Plaintiff for marketing to a specific client.[15] That a purported independent contractor (who, logically, would want to keep trade secrets to themselves) would disclose apparently misappropriated trade secrets to an entity that stands to benefit from them, before having any formalized professional relationship with that entity, is extraordinary, full stop. But here, it also is strong evidence of an agency relationship during the relevant period.

Accordingly, the court finds that M81 had substantial contact to MacDonald while she resided in Connecticut, and because this dispute arises from that specific relationship, M81 does have sufficient contact with Connecticut to support the exercise of specific jurisdiction over it.

Finally, the court finds that it would be reasonable to exercise this jurisdiction. Granted, the burden on M81 is not insignificant, given that it is a small, foreign company, but its professed burden appears to derive mostly from its small size and not from its primary location in France. The cost of litigating any action certainly can be substantial,

[15] Plaintiff also provided similar emails from MacDonald to this colleague on March 31, 2025, and April 1, 2025, each with only "FYI," in the body and attachments with titles clearly showing that they contained Plaintiff's commercial information. ECF Nos. 121-12 and 121-13. The transfer of Plaintiff's information therefore appears to have been somewhat prolonged, and one could infer that it was welcomed.

but here, M81's struggles derive from its limited human resources, not from the location of those resources. And the burden of responding to discovery would be the same regardless of where M81 is headquartered.

Furthermore, given MacDonald's and AmalMac's residency in Connecticut, the court finds that Connecticut's interest in adjudicating this action is not so attenuated as M81 argues. Plaintiff's interest in obtaining convenient and effective relief weighs in favor of exercising jurisdiction over M81, as it appears that no other state in the country could exercise jurisdiction over M81, leaving it with few options for recourse against the alleged recipient of its trade secrets. And while M81 asserts that Plaintiff's only lawful recourse is to "chase" it in France, the court simply does not agree, given that the current record clearly belies the proposition that M81 "has never engaged in any conduct in Connecticut." To the contrary, the evidence adduced by Plaintiff could lead a factfinder to conclude that M81 willingly and knowingly misappropriated Plaintiff's trade secrets with MacDonald, a Connecticut resident. Thus, it should not be surprised to be sued here.

In summary, the court finds that it does have specific jurisdiction over M81.

***2. <u>Forfeiture</u>***

The requirement for personal jurisdiction protects an individual right, which can be waived or forfeited, explicitly or implicitly. *Corporacion Mexicana De Mantenimiento Integral, S. De R.L. De C.V. v. Pemex-Exploracion Y Produccion*, 832 F.3d 92, 100–01 (2d Cir. 2016). Generally, all that is required to preserve the right is to assert it as a defense in one's responsive pleading. *Mattel, Inc. v. Barbie–Club.com*, 310 F.3d 293, 307 (2d Cir. 2002). However, even where, as here, a defendant does so, the defense still may be forfeited through the defendant's conduct. *City of New York v. Mickalis Pawn*

*Shop, LLC*, 645 F.3d 114, 134 (2d Cir. 2011) ("A court will obtain, through implied consent, personal jurisdiction over a defendant if '[t]he actions of the defendant [during the litigation] ... amount to a legal submission to the jurisdiction of the court, whether voluntary or not.'") (quoting *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 704–05 (1982)) (alterations in original). For example, a substantial delay in asserting the defense, while otherwise participating in pretrial proceedings, may result in forfeiture. *See Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 62 (2d Cir. 1999) (ruling that a defendant who "participated in pretrial proceedings but never moved to dismiss for lack of personal jurisdiction despite several clear opportunities to do so during the four-year interval after filing its answer" had forfeited its personal jurisdiction defense).

Here, M81 indisputably noted its jurisdictional challenge in the Local Rule 26(f) report, in its answer, and in the Motion to Dismiss, which generally would be the first opportunity to assert such a defense.[16] However, the first of these was filed two months after M81 appeared in this action, and since its appearance, M81 has participated in litigating the motion for a preliminary injunction, rather than moving for dismissal. Notably, "Rule 12(h)(1) 'advises a litigant to exercise great diligence in challenging personal jurisdiction'" and requires a litigant to raise the defense "'at the time he makes his first significant defensive move . . . .'" *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 730 (2d Cir. 1998) (quoting 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1391 (1990)). Before filing an answer, M81 sought discovery

[16] M81 contends that it first asserted this right in its response to Plaintiff's motion for a preliminary injunction, but the only mention of jurisdictional issues in that document is a single footnote in which M81 encourages the court to make its own assessment of jurisdiction, as is its obligation. ECF No. 46 at 3 n.4. But that obligation is only for *subject matter* jurisdiction. Thus, the court does not construe that footnote to assert any personal jurisdiction defense.

from Plaintiff, though apparently in response to Plaintiff's discovery requests of M81, and it prepared for a preliminary injunction hearing, though that hearing has not yet been held. M81 also participated in a settlement conference after its answer and the Local Rule 26(f) report were filed. Still, the court is not convinced that these actions, individually or in the aggregate, constitute a forfeiture of the personal jurisdiction defense.

However, the court finds it dispositive that before raising any clear challenge to the exercise of personal jurisdiction in any filing, M81 affirmatively sought the court's intervention in moving for imposition of a preliminary and permanent injunction. *See* ECF No. 85. This motion was M81's first significant defensive move, and the court finds it so significant as to give Plaintiff "a reasonable expectation that [M81 would] defend the suit on the merits . . . ." *Corporación Mexicana*, 832 F.3d at 102. In its injunction motion, M81 might have reserved a right to challenge personal jurisdiction later, but it did not do so (while taking care to preserve other rights). *Cf. Transaero, Inc. v. La Fuerza Aerea Boliviana,* 162 F.3d 724, 730 (2d Cir. 1998) (finding personal jurisdiction defense had been properly preserved even while asking the court to set aside default). This appeal to judicial authority, before clearly challenging personal jurisdiction, forfeits that defense. *Grammenos v. Lemos*, 457 F.2d 1067, 1070 (2d Cir. 1972) ("If a party enters a case, makes no objection to jurisdiction, and asks the court to act on its behalf in some substantive way, it will be held to have waived further objection.").

It is of no moment that M81 sought a restriction against itself. While consenting to an injunction does not always connote consent to personal jurisdiction, in this case, M81's voluntary restraint clearly was a defensive tactic. Though M81 offered to agree to an injunction against it, Plaintiff reportedly would not agree to a settlement without some

monetary remuneration, and so it appears that M81 attempted to unilaterally resolve the entire action by conceding to a permanent injunction in the hope that such action would moot Plaintiff's claims and end the suit. This is a clear and substantive acquiescence to the court's jurisdiction, and M81 may not mount an offense on the court's authority and then disclaim the same when its gambit does not pay off as it hoped.

Accordingly, the court also finds that M81 has forfeited its personal jurisdiction defense.[17]

## III. CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant M81's Motion to Dismiss, ECF No. 114, is **DENIED.**
2. Defendant M81's Motion to Stay Discovery, ECF No. 115, is **DENIED as moot.**
3. Defendant MacDonald's Motion to Stay Discovery, ECF No. 123, is **DENIED.**
4. Plaintiff's Motion for Leave to File Supplemental Evidence, ECF No. 126, is **DENIED as moot.**
5. The Motion to Seal filed at ECF No. 120 is **GRANTED.**
6. Defendants MacDonald and AmalMac are ordered to pay to Plaintiff its costs and fees in litigating the MacDonald Motion to Stay. This action hereby is referred to the Honorable United States Magistrate Judge Robert M. Spector for any proceedings His Honor deems necessary to produce a recommended ruling regarding a reasonable sanction.

[17] Given these two independent bases for exercise of personal jurisdiction, the court need not address whether M81 is subject to general jurisdiction, or whether Rule 4(k) applies in this case.

7. On or before **February 17, 2026,** The parties shall file cross-briefs regarding the appropriate contours of a preliminary injunction to govern the balance of this litigation. No responsive briefs shall be accepted.
8. A hearing on the outstanding motion for a preliminary injunction hereby is set for **March 2, 2026.** The preliminary injunction currently in place shall remain in effect until further order of the court.

**IT IS SO ORDERED** at Hartford, Connecticut, this 15th day of January, 2026.

*/s/*
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE